FILED
2011 Jan-14  AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **LOTTIE FOMBY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:08-cv-01167-AKK** |
| **HUBBELL POWER SYSTEMS, INC.,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Lottie Fomby ("plaintiff") filed this action against Hubbell Power Systems, Inc. ("defendant"), on July 1, 2008, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Plaintiff has filed four changes against defendant with the Equal Employment Opportunity Commission ("EEOC") in her 10-year employment with defendant.  It is clear that plaintiff believes that defendant has mistreated her and that she has had no choice but to resort to the EEOC and now to this court for relief for defendant's alleged retaliation against her for filing the four charges.  Although this court takes seriously the protections afforded to individuals who exercise their rights under Title VII, on the record here, plaintiff has failed to establish her retaliation claim.

1

Therefore, for the reasons set forth below, defendant's motion for summary judgment, doc. 31, is GRANTED.

## I.  MOTION TO STRIKE

Before addressing the motion for summary judgment, the court will first address defendant's motion to strike plaintiff's amended opposition brief, doc. 38, and Exhibits A and C to plaintiff's original opposition brief, doc. 36.  Doc. 41. The motion is DENIED as to the amended brief because defendant sought and received a two-day extension to respond to the brief.  Doc. 39; Text Order (August 25, 2010).  As to Exhibit C, the court was able to gather that plaintiff introduced the document at the deposition of Robert T. Williams, defendant's director of human resources.  However, defendant objected to the document and it led to an off-the-record conversation, doc. 33-3, Williams Dep. at 120-21, followed by blank and sealed deposition pages.  Because plaintiff did not respond to the motion to strike, the court lacks the relevant information to determine the source of the data in Exhibit C, whether plaintiff can authenticate the document, and if it undermines defendant's articulated reasons for the employment actions plaintiff challenges.  Consequently, the court GRANTS the motion to strike Exhibit C. Finally, the motion to strike Exhibit A is DENIED because, on its face, although the exhibit is not a sworn document, it purports to undermine defendant's

articulated reasons for the overtime decisions plaintiff challenges.  *See infra* at 25-

26.  Therefore, the court will consider the document.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden

of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving

party bears the initial burden of proving the absence of a genuine issue of material

fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to

"go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*.

at 324 (citation and internal quotation marks omitted).  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  The court must construe the evidence and all reasonable inferences arising

from it in the light most favorable to the non-moving party.  *Id*.  However, "mere

conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## III.   FACTUAL BACKGROUND[1]

Plaintiff is an African-American woman employed by defendant as a foundry specialist.  Doc. 7, Second Am. Compl. ¶ 9; Doc. 33-1, Plaintiff Dep. 16:16-18.  This action arises from plaintiff's claims that defendant denied her the opportunity to work overtime from October 2006 to March 2007, and suspended her for three days on October 4, 2007, in retaliation for filing EEOC charges against it.  Doc. 7 ¶¶ 15, 18.

### A.   *Defendant's Operations and Policies*

Defendant operates a foundry in Leeds, Alabama, that manufacturers equipment for electrical-utility companies ("the foundry").  Doc. 33 ¶ 1; Doc. 33-5, Williams Dec. ¶ 3.  The foundry is divided into three departments--British Molding Machine ("BMM"); Brass Short Order ("BSO"); and Aluminum Short Order ("ASO")--and workers are assigned to a particular department.  Doc. 32 ¶ 2; Doc. 33-5, Williams Dec. ¶ 8.  Defendant employs four basic categories of

---

[1]The facts are presented in the light most favorable to the plaintiff.

workers, one of which is foundry specialists who pour metal into molds and grind, cut, and inspect parts.  Doc. 32 ¶¶ 2, 3; Doc. 33-5, Williams Dec. ¶ 4.  Defendant also employs "lead persons," who are hourly employees with no supervisory authority over their fellow foundry workers.  Doc. 32 ¶¶ 4, 8; Doc. 33-5, Williams Dec. ¶ 6.  Instead, foundry employees report to supervisors, who, in turn, report to the Operations Manager.  Doc. 32 ¶ 5; Doc. 33-5, Williams Dec. ¶ 5.  Supervisors create the work schedules for each department and schedule overtime.  Doc. 32 ¶ 9; Doc. 33-5, Williams Dec. ¶ 8.

The foundry workers are represented by the Glass, Molders, Pottery, Plastics and Allied Workers International Union, Local 85B ("the Union"). Relevant here, defendant and the Union entered into a collective bargaining agreement, effective 2004-2009, generally known as the Union handbook.  Doc. 33-2, Plaintiff Dep, Ex. 17.  Pursuant to the Union handbook, foundry workers receive "[o]vertime at the rate of one and one-half (1½ ) times the regular rate of pay . . . for all hours worked in excess of forty (40) hours in any one week."  Doc. 33-2, Plaintiff Dep., Ex. 17 at 6.

Defendant maintains an Equal Employment Opportunity policy that prohibits discrimination and retaliation.  Doc. 32 ¶ 11; Doc. 33-2, Ex. 18. Defendant posts the policy on an employee bulletin board and distributes it to new

hires, including to plaintiff.  Doc. 32 ¶ 12; Doc. 33-5, Williams Dec. ¶ 7; Doc. 33-1, Plaintiff Dep. at 91:3-92:10.

**B.    *Plaintiff's Employment with Defendant***

Plaintiff began working for defendant in June 2000 and, at various times, has worked in all three departments as a foundry specialist.  Doc. 32 ¶ 13; Doc. 33-1, Plaintiff Dep. at 75:1-14.  From June 2000 until October 2006, plaintiff reported to Dan Gibson ("Gibson"), a supervisor who created her work schedule. Doc. 32 ¶ 15; Doc. 33-5 Williams Dec. ¶ 10.  When Gibson retired on September 31, 2006, his duties fell to Maintenance Manager Mike Clay ("Clay").  Doc. 32 ¶ 16; Doc. 33-5, Williams Dec. ¶ 10.  Defendant then hired John Abel ("Abel") as a supervisor, in February 2007, and he did the scheduling until February 2009.  Doc. 32 ¶ 17; Doc. 33-5, Williams Dec. ¶ 11; Doc. 33-7, Abel Dec. ¶¶ 1, 6.  Clay and Abel are the supervisors whose actions are at issue in this lawsuit.

Plaintiff filed her first EEOC charge in August 2005, alleging sexual harassment by Larry Massey, a lead person.  Doc. 32 ¶ 29; Doc. 33-1, Plaintiff Dep. at 17:6-18:10.  The EEOC investigated the charge and determined that there was insufficient evidence to support the allegations, and plaintiff did not pursue the matter further.  Doc. 32 ¶ 9; Doc. 33-1, Plaintiff Dep. at 18:19-21.

6

Plaintiff filed her second charge on April 19, 2006, alleging discrimination and retaliation due to a written-disciplinary warning she received for "failing to perform her assigned duties in an acceptable manner."  Doc. 33-2, Ex. 1 and 11. Defendant issued the warning when plaintiffs' co-workers complained that she selectively grinded smaller parts and left the difficult work for them.  Doc. 32 ¶ 19; Doc. 33-2 Ex. 10.  Plaintiff disagreed with her co-workers' assertions and refused to sign the warning.  Doc. 33-1, Plaintiff Dep. at 98:19-99.  In the EEOC charge, plaintiff alleged that she received the warning because she is African-American and in retaliation for her August 2005 charge.  Doc. 32 ¶ 30.  Plaintiff later withdrew the April 2006 charge.  Doc. 32 ¶ 30; Doc. 33-5, Williams Dec., Ex. A.

On March 5, 2007, plaintiff filed a grievance with the Union, asserting that "Larry Massey failed to abide by the union contract" by denying her overtime.[2] Doc. 32 ¶¶ 25-26; Doc. 33-5, Williams Dec., Ex. B.  Plaintiff specifically complained that defendant scheduled less senior employees for overtime even though the Union handbook provides that "[w]here skill and ability are relatively

---

[2]Defendant employed Massey as a lead person, who, like plaintiff, is a member of the Union and is not a supervisor.  As such, he had no involvement in scheduling.  Indeed, when asked during his deposition, "[d]id you ever have anything to do with getting people overtime or allowing people to work overtime," he responded, "[n]o, that's a supervisor's job."  Doc. 33-8, Massey Dep. at 32:11-14.

7

equal, seniority shall prevail in all promotions, increases or decreases of the work

force."  Doc. 33-5, Williams Dec., Ex. B; Doc. 36, Ex. D.  Notably, the

"Scheduled Overtime" section provides:

> The Company agrees to schedule no more than two (2) Saturdays per
> month.  The Company will post an overtime sign-up sheet on
> Wednesday, and qualified employees who sign the sheet will be given
> preference in the event Saturday work is needed.  Employees who
> sign up for Saturday work must work if work is available.  In the
> event other employees are needed to perform the Saturday work, the
> least senior employees will be required to work, provided they have
> not worked two (2) Saturdays during the month.  If the employee has
> worked voluntary Saturdays, those will count towards mandatory
> Saturdays.

Doc. 33-2, Ex. 17 at 6.  As to the type of overtime at issue here, the "Occasional

Daily Overtime" section provides:  "Where the Company determines that daily

overtime is necessary, the employees performing the job will be required to

perform the overtime work unless excused by their supervisor."  *Id*.

Defendant investigated and determined that plaintiff's grievance lacked

merit.  Specifically, in a letter dated March 23, 2007, defendant informed the

Union that "due to customer demands it was necessary to run the Brass Short

Order (BSO) line on ten-hour shifts," and, therefore, "employees who are regularly

assigned to work that line (BSO)" received overtime.  Doc. 33-5, Williams Dec. ¶

16 and Ex. C.  Defendant reasoned that because "[plaintiff] is assigned to work in

the British Molding Machine (BMM) area of the foundry," rather than the BSO,

8

she did not receive overtime. *Id*. Defendant also determined that "there were occasions when the Grinders [in the BSO department] were not being fully utilized, therefore they were asked to finish parts from the BMM [department,]" but that "[t]his was not done in an attempt to deprive [plaintiff] or any other employee the opportunity to work overtime." *Id*. Lastly, defendant noted that it was "unknown whether finishing the parts would have required overtime in the BMM area had they not been finished in the BSO area." *Id*.

Plaintiff testified that, based on the grievance, defendant "agreed to give me ten hours for the six months that I had lost," but that she declined the offer and instead filed her third EEOC charge on March 9, 2007, alleging retaliation in the form of the denial of overtime since October 2006. Doc. 33-1, Plaintiff Dep. at 174:4-18:2; Doc. 32 ¶ 31; Doc. 33-2, Ex. 2.

On October 3, 2007, plaintiff's co-workers reported that she incorrectly cut parts and, as a result, unnecessarily generated scrap in violation of defendant's work rules. Doc. 32 ¶ 20; Doc. 33-5, Williams Dec. ¶ 17. At that time, plaintiff had reached Step 4 of the disciplinary progression, and under defendant's rules and procedures, "[m]aking scrap unnecessarily" is "sufficient grounds for a two or three step advancement in the disciplinary progression, or advancement to either Step 5 or Step 6, or discharge following an investigation by [defendant]." Doc.

9

33-2, Plaintiff Dep., Ex. 8 (Work Rules) at 6.  Defendant investigated the reports and, on October 4, 2007, suspended plaintiff for three days without pay as its "Corrective Action" guidelines state that Step 5 results in "Written Warning #4 and three (3) day suspension."  *Id*. at 10; Doc. 32 ¶ 23; Doc. 33-2, Plaintiff Dep., Exs. 14 and 16.  Plaintiff challenged the suspension with the Union, asserting in her grievance that it was pretexual and in retaliation for her prior EEOC charges.  Doc. 33-5, Williams Dec., Ex. D.  Plaintiff also blamed defendant by contending that defendant never showed her how to properly cut certain parts.  Doc. 33-1, Plaintiff Dep. 115:3-15.

Defendant and the Union conducted separate investigations of the grievance, in which they each interviewed plaintiff's co-workers and inspected the damaged parts.  Doc. 33-5, Williams Dec. ¶¶ 20-21.  Based on the investigations, defendant concluded that the suspension was consistent with its disciplinary rules and procedures, and the Union withdrew the grievance.[3]  Doc. 32 ¶ 23; Doc. 33-5, Williams Dec. ¶¶ 19-21 and Ex. E.  However, on October 15, 2007, plaintiff filed a fourth EEOC charge, alleging that defendant suspended her in retaliation for her

---

[3]Notably, the Union's letter to defendant withdrawing the grievance also states:  "Per our conversation on the phone concerning [plaintiff's] written warning in her file.  The written warning that was issued on October 19, 2007 will be reduced to a Step 2 warning instead of a step six."  Doc. 33-5, Williams Dec., Ex. E.  The Union negotiated this because it meant plaintiff would receive a Step 3 written warning for her next infraction instead of termination, the Step 7 corrective action.  Doc. 33-2, Plaintiff Dep., Ex. 8 at 10.

prior EEOC charges.  Doc. 32 ¶ 33; Doc. 33-2, Ex. 3.

**C.      *Procedural History***

        In March 2008, plaintiff received a right-to-sue notice from the EEOC for

her third charge (March 9, 2007).  Doc. 32 ¶ 33.  Thereafter, plaintiff applied in

this court for (1) authorization to commence an action without prepayment of fees,

costs, or security and (2) appointment of an attorney under the Civil Rights Act of

1964, § 706(f)(1), 42 U.S.C. § 2000e-5(f)(1).  Doc. 1.  The court appointed

counsel for plaintiff, doc. 3, and counsel filed an amended complaint on August

13, 2008, doc. 4, and a second-amended complaint on September 15, 2008, in

which she alleged:

> [She] suffered unlawful employment practices including, but not
> limited to sexual harassment and intimidation from supervisory
> personnel, a hostile work environment, reprisal and retaliation for
> exercising a protected right, and unwarranted and unfound
> disciplinary action, including but not limited to *suspension without
> pay* and deprivation of overtime.  Plaintiff alleges that she was denied
> the opportunity to work overtime on a continuous basis as early as
> October 2006.  Plaintiff alleges that similarity [*sic*] situated
> employment [*sic*] who have not been involved in protected activity
> were allowed to work overtime.

Doc. 7 ¶ 15 (emphasis added).

        Although the second-amended complaint references several forms of

unlawful employment practices, the only right-to-sue notice plaintiff had at the

time she filed the second-amended complaint related to her March 9, 2007, charge

11

for the denial of overtime.  On or about September 30, 2009, after filing the

second-amended complaint, plaintiff received a right-to-sue notice for her fourth

charge (October 15, 2007) challenging the three-day suspension.  Doc. 33-1,

Plaintiff Dep. at 41:1-5 and 44:9-12.  However, plaintiff did not amend her

complaint a third time to add a claim for the suspension – presumably because she

referenced the suspension in paragraph 15 of the second-amended complaint.

Doc. 7 ¶ 15.  When asked about this in her deposition, plaintiff had the following

exchange with defense counsel:

> Q:    . . . is your lawsuit also about your being suspended?
>
> A:    Well, that was one of the lawsuits they gave me the right to sue, when
>       I was suspended, but I didn't file that one with the lawsuit–I mean
>       with the EEOC, but they had given me a right to sue again, but I just
>       didn't file it.  The EEOC gave me the right to sue after being
>       suspended for three days without pay.
>
> Q:    Okay.  And you recently received that right to sue.  I believe it was in
>       September of 2009?
>
> A:    I received I, right, but I didn't file that one.
>
> . . .
>
> Q:    Okay.  But what I'm asking you, is that what your lawsuit is about,
>       other than your being not given certain overtime?  Is it also about
>       being, in your mind, wrongfully suspended?
>
> A:    Yes.

. . .

Q:     But what you're saying is you didn't go back to the court and file that particular allegation with the court?

A:     I didn't.

Q:     Okay.  Now, is there a reason why you didn't do that?

A:     Yes.

Q:     And what was that reason?

. . .

A:     Well, in my opinion, I was not trying to lose my job by filing another lawsuit, because I had filed this one about not getting the overtime, and to me, I would be showing the company that I'm just not out for blood.  I'm not out for blood, and although I wanted to be treated right, I'm not just wanting to file lawsuit after lawsuit against the company.

Doc. 33-1, Plaintiff Dep. at 39:14-44:5.

## IV.  ANALYSIS

### A.     *Plaintiff Abandoned her Suspension Claim*

Defendant contends that plaintiff abandoned her suspension claim.  Doc. 32 at 16.  Specifically, defendant argues that, even apart from plaintiff's testimony about abandoning the claim, the suspension claim is untimely because plaintiff never amended her complaint to add allegations from her October 15, 2007, charge after receiving the right to sue.  Doc. 32 at 17-18.  Plaintiff disagrees and

13

asserts that "while [she] may not have specifically amended her complaint, [the] Second Amended Complaint does include reference to [the suspension] in paragraph #15."  Doc. 35 at 1.

Plaintiff is correct that she referenced her suspension in her second-amended complaint.  However, even if the court sides with her and finds that this pre-right-to-sue inclusion is sufficient to preserve the claim, she still faces the hurdle her deposition testimony created.  As defendant points out, plaintiff testified unequivocally that she chose not to pursue her suspension claim in *this* lawsuit because she wanted to "show[] the company that I'm just not out for blood . . . I'm not just wanting to file lawsuit after lawsuit against the company."  Doc. 33-1, Plaintiff Dep. 44:1-5.  Thus, by her own testimony, plaintiff abandoned her suspension claim.  Moreover, plaintiff failed to respond to this contention and focused instead solely on defendant's failure to amend argument.  As it relates to defendant's separate and distinct argument that she waived the claim in her deposition testimony, "[s]ummary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue."  *Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993),  *aff'd*, 44 F.3d 1008 (11th Cir. 1995).  Therefore, the suspension claim fails.

14

**B.** **Plaintiff Does Not Present Evidence of Material Issues of Disputed Facts Sufficient to Survive Summary Judgment on Her Suspension Claim**

Alternatively, even if the court finds that plaintiff has not waived her suspension claim, summary judgment is still warranted because she failed to make a *prima facie* case or rebut defendant's articulated reasons.  "To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events."  *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted).  "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability."  *Id*. (citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073, 1075 n. 54 (11th Cir. 1995)).  "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct."  *Goldsmith*, 513 F.3d at 1277 (citation omitted).

1.    *Plaintiff fails to establish a prima facie case.*

Plaintiff's *prima facie* case fails because she failed to demonstrate a causal

connection between her protected activity and her suspension.  The law in this circuit is clear that "[i]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  Indeed, in *Thomas*, the Eleventh Circuit found that a plaintiff failed to demonstrate a causal connection between a complaint of sexual harassment and her termination three months later where she had no other evidence of causation.  *Id*. at 1364.  And even more recently, the Eleventh Circuit reaffirmed this principle and held that, absent other evidence of causation, "[e]ven a three-month interval between the protected expression and the adverse action . . . is too long."  *Brown v. Alabama Dept. of Transp.,* 597 F.3d 1160, 1182 (11th Cir. 2010).

Turning to the facts here, defendant suspended plaintiff on October 4, 2007, almost 7 months after her third EEOC charge (March 2007), and 26 and 18 months after her first (August 2005) and second (April 2006) EEOC charges, respectively. The intervals of 26, 18, and 7 months, between the protected activity and the adverse action are too remote to establish causation.  *See Thomas*, 506 F.3d at 1364; *Brown*, 597 F.3d at 1182.  This lack of a temporal proximity is fatal to plaintiff's retaliation claims.

16

Further, plaintiff also cannot show causation because she failed to produce any evidence indicating that the supervisor who suspended her (Abel) knew of her prior EEOC charges.  Instead, plaintiff contends only that "[k]nowledge of the company can be imputed to . . . Abel since . . . [his] position[] [was] of a supervisory nature."  Doc. 36 ¶ 39.  However, the case law states otherwise and requires actual proof of knowledge:  "In a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).  This is because "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecomms., Inc.,* 231 F.3d 791, 799 (11th Cir. 2000).  Accordingly, plaintiff's *prima facie* case fails.

> 2.    *Plaintiff's claim fails also because defendant articulated a legitimate, non-retaliatory reason for the suspension.*

Even if plaintiff can establish a *prima facie* case, summary judgment is warranted because she cannot overcome defendant's legitimate, non-retaliatory reason for suspending her–i.e., that she generated excessive scrap.  Defendant submitted evidence demonstrating that plaintiff's co-workers reported that she

improperly cut parts and that its rules and procedures provide that "[m]aking scrap unnecessarily" is "sufficient grounds for a two or three step advancement in the disciplinary progression, or advancement to either Step 5 or Step 6, or discharge . . . ." Doc. 33-2, Ex. 8 (Work Rules) at 6.  Here, plaintiff was already at Step 4 in the disciplinary process and defendant chose to advance her to Step 5, which called for a written warning and a three day suspension.  *Id*. at 10.  Defendant further notes that plaintiff did not deny improperly cutting certain parts and that Robert T. Williams, the director of human resources, testified that he examined the parts that he understood were "taken from [plaintiff's pile,]" and that "and it was obvious to [him] that they were not cut properly and unusable."  Doc. 33-5, Williams Dec. ¶ 19.  Significantly, the Union also investigated this matter, reviewed the parts in question, talked to plaintiff's co-workers, and, thereafter, withdrew plaintiff's grievance.  Doc. 33-5, Williams Dec., Ex. E.  While the withdrawal alone does not establish the absence of retaliatory animus by defendant, it does support defendant's contention that plaintiff generated excessive scrap.  Thus, defendant has satisfied its burden of production.

> 3.   *Plaintiff fails to establish that defendant's articulated reason is pretext for unlawful retaliation.*

Once an employer offers a legitimate reason for the challenged action, the

plaintiff "must meet the reason proffered head on and rebut it."  *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citations omitted).

Significantly, "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'"  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).  Rather, as the Eleventh Circuit has often emphasized:  "'No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [federal law] does not interfere.  Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.'"  *Id*.  Instead, the court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (citations and internal quotation marks omitted).

Here, to show pretext, plaintiff contends that defendant neither trained her to cut certain parts nor suspended other workers for generating scrap parts.  Specifically, plaintiff testified that parts are often scrapped and that "no one has ever been suspended on some parts."  Doc. 33-1, Plaintiff Dep. 120:18-19.

However, when challenged in her deposition for specifics, plaintiff acknowledged that her co-worker, Celestino Frausto, showed her how to cut the parts in question. Doc. 33-2, Plaintiff Dep. 119-20.  Further, she admitted that she had not reviewed other employees' personnel files to see if defendant disciplined any of them.  Doc. 33-1, Plaintiff Dep. 119-:1-121:3-20.  Indeed, plaintiff failed to produce any evidence to support her contention that defendant failed to discipline other employees for generating scrap.  In contrast, Williams, defendant's director of human resources, testified in his declaration that he is "aware that other foundry workers at the Leeds facility have been disciplined for unnecessarily generating scrap," and that defendant disciplined an employee in August 2008 for unnecessarily generating scrap.  Doc. 33-5, Williams Dec. ¶ 23.

In addition to failing to present sufficient evidence of pretext, plaintiff's own testimony undermines her contention that retaliatory animus factored into the suspension.  Specifically, when asked if her "suspens[ion] had anything to do with . . . filing the EEOC charges," plaintiff responded "I don't know, but I never should have been suspended."  Doc. 33-1, Plaintiff Dep., at 184:11-15.  While plaintiff may be correct in thinking that defendant should not have suspended her, this court's inquiry is limited to ascertaining whether "the employer gave an honest explanation of its behavior," rather than reexamining the fairness of the

decision.  *Chapman*, 229 F.3d at 1030.  On this record, the court finds that

plaintiff failed to rebut defendant's articulated reason for her suspension.

Therefore, summary judgment is granted on the suspension claim.

**B.    *Plaintiff Does Not Present Evidence of Material Issues of Disputed Fact Sufficient to Survive Summary Judgment on Her Retaliation Claim Based on the Alleged Denial of Overtime***

Like her suspension claim, plaintiff's overtime claim is also flawed in

several respects.  As shown below, the alleged denial of overtime is too remote

from the protected activity and thus undermines plaintiff's *prima facie* case.

Further, defendant articulated a legitimate, non-retaliatory reason for the denial of

overtime, which plaintiff failed to rebut.

*1.     Plaintiff fails to establish a prima facie case.*

As with the suspension claim, defendant argues that plaintiff cannot

establish a *prima facie* case because there is no causal connection between the

protected activity and the alleged denial of overtime.  In response, plaintiff

appears to argue that she has created an issue of fact as to causation because, she

asserts, the supervisors retaliated against her and "[she] believes that she has

shown the actions of supervisors should be imputable to [defendant]."  Doc. 38 at

2.  To support this contention, plaintiff cites two Fifth Circuit cases, *Gee v.*

*Principi*, 289 F.3d 342 (5th Cir. 2002) and *Long v. Eastfield College*, 88 F.3d 300

21

(5th Cir. 1996), for the proposition that "motives of a supervisor can sometimes be imputed to an ultimate decision maker."  Doc. 38 at 2.

The case law in question, however, does not help plaintiff because she failed to produce any evidence indicating that the supervisors she contends retaliated against her (Abel and Clay) knew of her prior EEOC charges or had improper motives.  First, as to Abel, plaintiff contends that "knowledge of the company can be imputed to . . . Abel since . . . [his] position[] . . . [was] of a supervisory nature."  Doc. 36 ¶ 39.  However, again, this contention is contrary to the case law, which specifically holds that a plaintiff must show knowledge by the actual decision maker.  *See Raney*, 120 F.3d at 1197.  Plaintiff failed to present any such evidence as it relates to Abel.[4]  *Id*.

Next, as to Clay, plaintiff makes the same argument, but adds that "she felt" retaliation from Massey, the lead employee, because of the August 2005 charge she filed against him, doc. 32 at 8, and that "Mr. Clay was always taking to Mr. Massey and so it is easy to assure [*sic*] with a high degrees [*sic*] of certainty that Massey told him about the EEOC charge of sexual harassment that had been filed against him."  Doc. 32 at 14 ¶ 40.  However, Massey was not a member of

_____

[4]Additionally, Abel testified that he "never refused to give [plaintiff] overtime on any occasion because she had filed prior complaints with the EEOC against [defendant] or because she otherwise complained."  Doc. 33-7, Abel Dec., ¶ 6.

management and, therefore, plaintiff's reliance on case law about imputing a supervisor's knowledge to the decision maker misses the mark.  Moreover, plaintiff fails to include any evidentiary support to establish her assertion that Massey disclosed the charge to Clay or that Clay knew of her prior EEOC charges. In fact, Clay testified to the contrary:  "[A]t the time I was the acting Foundry Supervisor and was assigning overtime for the foundry workers, including [plaintiff], I was not aware that she had made any complaints to the EEOC or otherwise complained that anyone at [defendant] had discriminated, harassed, or retaliated against her."  Doc. 33-6, Clay Dec. ¶ 13.

In the final analysis, plaintiff has not produced any evidence indicating that Clay or Abel, the supervisors who made the decisions concerning overtime, knew of her EEOC charges or complaints of harassment, discrimination, or retaliation. Absent such evidence, her assertions to the contrary are rank speculation with no evidentiary value.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("'Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.' *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995).").  This lack of credible evidence on knowledge is fatal to plaintiff's *prima facie* case because a "decision maker cannot have been motivated to retaliate by something unknown to

him." *Brungart*, 231 F.3d at 799.

Moreover, plaintiff's *prima facie* case fails also because, like her suspension

claim, her only evidence of causation is the purported temporal proximity between

her prior EEOC charges and the denial of overtime.  Essentially, plaintiff alleges

that defendant denied her the opportunity for overtime "as early as October 2006,"

because she filed EEOC charges in August 2005 and April 2006.  Doc. 7, ¶ 15.

Absent other evidence of causation, the intervals of 12 and 6 months, respectively,

between the filing of the charges and the denial of overtime are too remote to

establish causation.  *See Thomas*, 506 F.3d at 1364; *Brown*, 597 F.3d at 1182.

Therefore, plaintiff's *prima facie* case fails.

> 2.   *Plaintiff's claim also fails because defendant articulated a legitimate, non-retaliatory reason for the denial of overtime and plaintiff failed to show that defendant's articulated reason is pretextual.*

Even assuming plaintiff can establish a *prima facie* case, summary judgment

is still warranted because she cannot overcome defendant's articulated reasons for

the denial of overtime–i.e., that it schedules overtime by department and plaintiff

did not receive the overtime in question because she worked in a different

department during the relevant time period.  The decisionmakers Clay and Abel

each testified that defendant assigned overtime by department, not seniority.  Doc.

33-6, Clay Dec. ¶ 8; doc. 33-7, Abel Dec. ¶ 6.  Although plaintiff acknowledged

this fact, doc. 33-1, Plaintiff Dep. at 148-149, making it undisputed, plaintiff

contends nonetheless that defendant *should* have used seniority for overtime since

it utilized this system "in the past but is just not presently observed," and because

"every other action in the plant is based on seniority."  Doc. 36 at 2.  While this

may in fact be the case, apparently defendant decided at some point to treat

overtime differently and "it is not . . . [this court's] role to second-guess the

wisdom of an employer's business decisions--indeed the wisdom of them is

irrelevant--as long as those decisions were not made with a discriminatory

motive." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir.

2010).  Here, there is no evidence that defendant changed its overtime-assignment

practices for discriminatory or retaliatory reasons.  Therefore, this court will not

second guess defendant's decision or mandate that it reimplement its previous

practice of assigning overtime by seniority, nor can this court do so.

Finally, to show pretext, plaintiff identifies Pressie Kirksey, Kimberly Dove,

and Stephanie Pickett as less senior foundry employees to whom defendant

assigned daily overtime during the period in question.  Doc. 33-1, Plaintiff Dep. at

154, 164, 168.  To support her contention, plaintiff submitted the unsworn

statement of Felicia Mabry, the president of the Union, who claims she saw these

three employees "working on work from [plaintiff's] Dept. and this was overtime

25

work.  Kimberly [Dove] told me at least 3 days a week they were doing overtime

work from [plaintiff's] Dept. and [plaintiff] was sent home."  Doc. 36, Ex. A.

However, plaintiff's reliance on these three employees is misplaced because they

do not support her contention that retaliatory animus factored in the overtime

denial.  Defendant has established that the three worked in the BSO and ASO

departments, rather than in the BMM department as plaintiff.  Doc. 33-5, Williams

Dec. ¶ 22 and Ex. F (time records).  Indeed, even the statement from Mabry

supports this fact because she asserts that the three took overtime away from

plaintiff's *department*.[5]  Because defendant contends – and plaintiff agrees – that

overtime is by department, overtime assignments to these three employees do not

establish retaliation toward plaintiff.  *See Rioux v. City of Atlanta*, 520 F.3d 1269,

1280 (11th Cir. 2008) (holding that a plaintiff must show that comparators are

similarly situated "in all relevant aspects") (citations and quotation marks

---

[5]Mabry's contention that the BSO and ASO department employees took work from
plaintiff and other BMM department employees is an issue that affected the entire BMM
department, and thus does not support plaintiff's contention that defendant retaliated against her.
Moreover, defendant articulated a non-retaliatory reason for having BSO and ASO employees do
work for the BMM department.  In responding to plaintiff's grievance, defendant explained:
"[T]here were occasions when the Grinders [in the BSO department] were not being fully
utilized, therefore they were asked to finish parts from the BMM [department,]" but that "[t]his
was not done in an attempt to deprive [plaintiff] or any other employee the opportunity to work
overtime."  Doc. 33-5, Williams Dec., Ex. C.  Further, defendant informed the Union that it was
"unknown whether finishing the parts would have required overtime in the BMM area had they
not been finished in the BSO area."  *Id*.

omitted), *reh'g en banc denied*, 285 Fed. Appx. 741 (2008); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (holding that a "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer").  In the end, plaintiff has not identified any employees assigned to the BMM department who, unlike her, received overtime. In fact, the evidence before this court is to the contrary:  "[Plaintiff] was not scheduled for this daily overtime because she was in a different department. Others in the BMM foundry, including others who did grinding work, were not assigned overtime in the BSO department either."  Doc. 33-7, Abel Dec. ¶ 7. Where, as here, plaintiff failed to show that defendant treated her differently than similarly situated employees, she simply cannot meet her burden of establishing that defendant's proffered reason is pretextual.  Therefore, her claim fails.

## V.   CONCLUSION

Having determined that there are no genuine issues of disputed fact for trial, the court hereby grants summary judgment in favor of defendant on all counts and dismisses this case with prejudice.

DONE this 14th day of January, 2011.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE